IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,        )
                                 )
               Plaintiff,         )              4:07CR3156
                                 )
          v.                      )
                                 )
                                 )           REPORT, RECOMMENDATION
JERRY LEE ZUNIGA,                 )                  AND ORDER
                                 )
               Defendant.         )
_____

     The defendant was indicted by a grand jury for violating 18
U.S.C. § 2250(a).  Filing 1.  Specifically, the indictment
alleges:

          From on and before March 1,2007 and continuing until at
          least November 1, 2007, in the District of Nebraska,
          JERRY LEE ZUNIGA, having previously been convicted in
          the State of Utah of an offense requiring him to
          register as a sex offender, to-wit:  Unlawful Sexual
          Activity with a Minor, 3rd degree Felony, and Attempted
          Forcible Sexual Abuse, 3rd degree Felony, traveled in
          interstate commerce to Nebraska, and knowingly failed
          to register as a sex offender in the State of Nebraska,
          where he resided, as required by the Sex Offender
          Registration and Notification Act.

Filing 1.

     The defendant filed a motion to:  1) dismiss the indictment
under the non-delegation doctrine, the Ex Post Facto Clause, the
Commerce Clause, the Due Process Clause, and the Tenth Amendment,
and, 2) suppress his post-arrest statements under the Fifth
Amendment.  Filing 20.  An evidentiary hearing was held on
February 27, 2008, and during the hearing, the defendant orally
moved to suppress his post-arrest statements on Sixth Amendment
grounds.  The parties have filed pre- and post-hearing briefs.

Based on the evidence and applicable law, I conclude the defendant's motion to dismiss and motion to suppress should be denied.

## FINDINGS OF FACT

The defendant was convicted on June 23, 1998 of attempted forcible sex abuse and unlawful sexual activity with a minor, both third degree felonies under Utah law.  Ex. 3, p. 2.  See Utah Code Ann. §§ 76-5-401 & 404.  On December 20, 2005, the defendant registered as a sex offender pursuant to Utah's sex offender registration law, and he was provided written notice of his continuing obligation to register annually and within five days of every change in residential address, vehicle information, or educational information.  The notice specifically advised the defendant of his obligation to notify:

- The state and territorial agencies in the states where the registrant presently resides and plans to reside when moving across state lines.

- The out-of-state agency where the offender is living, whether or not the offender is a resident of that state.

- The out-of-state agency where the offender is a non-resident worker or non-resident student.

- The out-of-state agency where the offender is subject to registration under that state's laws for the time period the offender will be in that state.

Ex. 3, p. 6.  The Utah Sex Offender Registration Program sent a notice to the defendant on July 11, 2006 which reminded him that his annual registration was due on or before July 31, 2006 and that, should he fail to comply, his "non-compliant status will be

2

forwarded to the local law enforcement agency for investigation and prosecution."

Neither the written notice provided by Utah and signed by the defendant on December 20, 2005, nor the July 11, 2006 letter sent to the defendant by the Utah Sex Offender Registration Program mentioned the federal Sex Offender Registration and Notification Act, 42 U.S.C. § 16911 et seq., ("SORNA"). Nebraska's sex offender registry is likewise operated in accordance with the terms of its statutory law, (Neb. Rev. Stat. § 29-4001 et seq. See Ex. 105. Nebraska has not implemented any regulations or guidelines for state compliance with SORNA. Ex. 101, ¶ 3. The United States Attorney General has promulgated proposed SORNA guidelines, (see Ex. 104), but these guidelines have not yet been finalized. Ex. 101, ¶ 3.

An indictment was filed against the defendant in this court on November 15, 2007. The grand jury charged the defendant with violating SORNA. Filing 1. Specifically, the indictment alleges the defendant is a convicted sex offender, and during the time frame beginning on or about March 1, 2007 and continuing until at least November 1, 2007, he traveled in interstate commerce and knowingly failed to register as a sex offender in Nebraska. Filing 1. A federal arrest warrant was issued on November 16, 2007. Filing 4.

The defendant traveled from Utah to Nebraska and arrived in Nebraska on or about February 6, 2007. He stayed in a motel in Crete, Nebraska from February 6, 2007 until February 13, 2007, and thereafter lived in Beatrice, Nebraska until the federal arrest warrant was executed on November 23, 2007. Ex. 101, ¶ 1.

The defendant did not leave Nebraska between February 6, 2007 and November 23, 2007.  Ex. 101, ¶ 2.

Following his arrest, the defendant was initially housed in the Gage County Jail.  On November 26, 2007, Deputy United States Marshals Allen Jewitt and Randy Kruid, and Lancaster County Deputy Sheriff Ryan Shoemacher arrived at the Gage County Jail to transfer the defendant to the Saline County Jail in Wilbur, Nebraska.  When Deputy Jewitt arrived at the Gage County Jail, he identified himself, advised the defendant that he was being transferred to the Saline County Jail, and asked if the defendant was willing to be interviewed regarding the pending federal charges.  The defendant agreed to be questioned.

Deputy Marshal Kruid and Deputy Sheriff Shoemacher transported the defendant to the Saline County Jail.  Deputy Marshal Jewitt followed in a separate vehicle.  After arriving at the Saline County Jail, the defendant was escorted to the jail's multipurpose interview room for questioning by Deputy Marshal Jewitt.  Deputy Marshal Jewitt was wearing casual attire and was not armed.  Deputy Sheriff Shoemacher and Deputy Marshal Kruid were also present in the interview room and, like Deputy Marshal Jewitt, neither was in uniform or armed.

Deputy Marshal Jewitt tape-recorded his communications with the defendant at the Saline County Jail.  The recording was later converted to a CD.  Ex. 1.  Before asking any questions, Deputy Marshal Jewitt advised the defendant of his Miranda rights by reading each right aloud from a written advisement of rights form.  See exs. 1, 2 & 5.  As to each right, Deputy Marshal Jewitt asked if the defendant understood that right, and wrote the defendant's response on the advisement of rights form.  The

4

defendant indicated he understood each of his rights.  When asked
if he was willing to answer questions, the defendant responded,
"I guess."  Deputy Marshal Jewitt asked if the defendant was
willing to answer questions without an attorney present.  Without
hesitation, the defendant responded, "Sure."  Ex. 1.  The
defendant then reviewed the advisement of rights form and
initialed his prior responses as written by Deputy Marshal
Jewitt.  See Ex. 2.

Deputy Marshal Jewitt began asking questions.  The interview
lasted less than thirty minutes.  The defendant never asked
Deputy Marshal Jewitt to stop the interrogation, never refused to
answer any question posed, and never asked for or indicated that
he wanted a lawyer.  Ex. 1.

At the time of his arrest and questioning, the defendant was
twenty-nine years old.  See Ex. 2, p. 2 & Ex. 5.  He speaks
English, and was advised of his Miranda rights and questioned in
English.  The defendant's answers were responsive to the
questions asked.  The defendant may have been in leg irons, but
he was not handcuffed.  He did not appear to be intoxicated or
disoriented at the time of the interview.  The defendant was
never threatened or physically intimidated, and no promises were
made to secure his consent or cooperation with interrogation.

After the interview, Deputy Marshal Jewitt realized that the
defendant had not been asked to sign the written advisement of
rights form.  On November 28, 2007, the defendant was transported
to the federal building in Lincoln, Nebraska for his initial
appearance.  See docket entry 7.  While the defendant was in the
custody of the United States Marshal awaiting his court hearing,
Deputy Marshal Jewitt approached the defendant, reminded him of

5

the interview conducted at the Saline County Jail, and asked the
defendant if he would sign the advisement of rights form.  The
defendant signed the form.  See Ex. 5.

LEGAL ANALYSIS

The defendant's pending motion consists of both a motion to
dismiss the indictment filed under SORNA, and a motion to
suppress the defendant's post-arrest statements.  The substantive
legal merit of these motions will be separately discussed.

I.   MOTION TO DISMISS

A.   Standard of Review.

An indictment is sufficient if it includes the elements of
the offense, provides adequate notice of the charge, and enables
the defendant to plead double jeopardy as a bar to further
prosecution.  Hamling v. U.S., 418 U.S. 87 (1974); U.S. v.
Hernandez, 299 F.3d 984, 992 (8th Cir. 2002); U.S. v. Diaz-Diaz,
135 F.3d 572, 575-76 (8th Cir. 1998).  "An indictment will
ordinarily be held sufficient unless it is so defective that it
cannot be said, by any reasonable construction, to charge the
offense for which the defendant was convicted." Hernandez, 299
F.3d at 992.

The indictment filed against the defendant alleges he
violated 18 U.S.C. § 2250.  To obtain a criminal conviction under
18 U.S.C. § 2250, the government must prove:  1) the Defendant is
a sex offender subject to registration under SORNA,(18 U.S.C.
2250(a)(1)); 2) federal jurisdiction exists either because the
defendant was convicted as a sex offender under federal law or

because the defendant traveled in interstate or foreign commerce, (18 U.S.C. 2250(a)(2)(A) and 2(B)); and 3) the defendant knowingly failed to register or update his sex offender registration as required, (18 U.S.C. 2250(a)(3)).   U.S. v. Cardenas, 2007 WL 4245913, 13 (S.D. Fla. Nov. 29, 2007); U.S. v. Hinen, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007).   The grand jury indictment against defendant Zuniga alleges the essential elements of the crime of failing to register as required under SORNA.

An evidentiary hearing was held on defendant's motion to dismiss and to suppress evidence.   A court cannot dismiss a facially valid indictment because it weighed the evidence supporting a probable cause finding and concluded the indictment is supported by incompetent or insufficient proof.

> If indictments were to be held open to challenge on the
> ground that there was inadequate or incompetent
> evidence before the grand jury, the resulting delay
> would be great indeed.   The result of such a rule would
> be that before trial on the merits a defendant could
> always insist on a kind of preliminary trial to
> determine the competency and adequacy of the evidence
> before the grand jury.   This is not required by the
> Fifth Amendment.   An indictment returned by a legally
> constituted and unbiased grand jury, like an
> information drawn by the prosecutor, if valid on its
> face, is enough to call for trial of the charge on the
> merits.   The Fifth Amendment requires nothing more.

Costello v. U.S., 350 U.S. 359, 363 (1956).   See also, U.S. v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985)(a facially valid indictment should not be dismissed for insufficient evidence if there is some competent evidence to sustain the charge issued).

However, a trial court may consider evidence on pretrial motions to dismiss in cases, such as this one, "where the

7

operative facts are undisputed and the government fails to object
to the district court's consideration of those undisputed facts
in making the determination regarding a submissible case." <u>U.S.
v. Hall</u>, 20 F.3d 1084, 1088 (10th Cir. 1994).  See also, <u>U.S. v.
Risk</u>, 843 F.2d 1059 (7th Cir. 1988)(holding that pretrial
dismissals based on the undisputed facts may be warranted where
the government fails to timely object).[1]

     B.    <u>The federal Sex Offender Registration and Notification
         Act ("SORNA").</u>

The Adam Walsh Child Protection and Safety Act of 2006 was
enacted "[t]o protect children from sexual exploitation and
violent crime, to prevent child abuse and child pornography, to
promote Internet safety, and to honor the memory of Adam Walsh
and other child crime victims."  Pub. L. No. 109-248, 120 Stat.
587 (July 27, 2006).  Title I of the Adam Walsh Act codified the
"Sex Offender Registration and Notification Act," 42 U.S.C. §
16911 et seq., ("SORNA").  The purpose of SORNA is "to protect
the public from sex offenders and offenders against children" by
establishing "a comprehensive national system" for the
registration of sex offenders.  42 U.S.C. § 16901.  Pursuant to
SORNA, each jurisdiction (including each state) must maintain "a
jurisdiction-wide sex offender registry" that conforms to the
requirements of SORNA.  See 42 U.S.C. § 16911(10) (defining
"jurisdiction") & 42 U.S.C. § 16912(a).  A jurisdiction that
fails to timely comply with the requirements of SORNA "shall not

---

[1]The court notes that the allegations of the indictment and
the stipulated evidence on this motion to dismiss are not
entirely consistent.  Specifically, the indictment charges the
defendant with traveling in interstate commerce from March 1,
2007 through November 1, 2007, but under the stipulated evidence,
defendant's interstate travel occurred on February 6, 2007, and
not thereafter.

receive 10 percent of the funds that would otherwise be allocated
for that fiscal year to the jurisdiction" for local law
enforcement and justice assistance programs.  42 U.S.C. § 16925.
See also, 42 U.S.C. § 3750 et seq.

Under SORNA, "an individual who was convicted of a sex
offense," (42 U.S.C. § 16911(1)(defining "sex offender")), must
"register, and keep the registration current, in each
jurisdiction where the offender resides, where the offender is an
employee, and where the offender is a student."  42 U.S.C. §
16913(a).  "For initial registration purposes only, a sex
offender shall also register in the jurisdiction in which
convicted if such jurisdiction is different from the jurisdiction
of residence." 42 U.S.C. § 16913(a).  Within three business days
after any change of "name, residence, employment, or student
status," sex offenders must appear in person in at least one
jurisdiction involved and notify that jurisdiction of all changes
in the information which must be reported to the sex offender
registry.  42 U.S.C. § 16913(c).

SORNA sets forth the following initial registration
requirements for those convicted of sex offenses:  Sex offenders
serving a prison sentence must register before completing their
term of imprisonment, and those not sentenced to prison must
register within three business days after sentencing.  42 U.S.C.
§ 16913(b).  Further, 42 U.S.C. § 16913(d), titled "Initial
registration of sex offenders unable to comply with subsection
(b) of this section," states:

> The Attorney General shall have the authority to
> specify the applicability of the requirements of this
> subchapter to sex offenders convicted before July 27,
> 2006 or its implementation in a particular
> jurisdiction, and to prescribe rules for the

9

> registration of any such sex offenders and for other
> categories of sex offenders who are unable to comply
> with subsection (b) of this section.

42 U.S.C. § 16913(d).

Pursuant to the authority cited in 42 U.S.C. § 16913(d), the
Attorney General issued an interim rule on February 28, 2007
which stated:

> The requirements of the Sex Offender Registration and
> Notification Act apply to all sex offenders, including
> sex offenders convicted of the offense for which
> registration is required prior to the enactment of that
> Act.

28 C.F.R. § 72.3.

Pursuant to SORNA, "shortly before release of the sex
offender from custody, or, if the sex offender is not in custody,
immediately after the sentencing of the sex offender," an
appropriate official must ensure that the sex offender is
registered, inform the sex offender of the duties required under
SORNA, and explain those duties.  42 U.S.C. § 16917(a)(1) & (3).
The sex offender must "read and sign a form stating that the duty
to register has been explained and that the sex offender
understands the registration requirement."  42 U.S.C. §
16917(a)(2).  However, Congress apparently anticipated that
compliance with the registration and notice requirements of 42
U.S.C. § 16917(a) would be impossible in some circumstances.  It
therefore enacted 42 U.S.C. § 16917(b), which directs the
Attorney General to adopt notice and registration rules governing
such circumstances.

Although Congress tasked the Attorney General with the

10

responsibility for issuing "guidelines and regulations to interpret and implement" SORNA, (42 U.S.C. § 16912(b)), other than the previously cited interim rule, the Attorney General has not finalized and adopted any such guidelines and regulations. Proposed regulations, however, are pending.

Currently, the information the sex offender must provide under SORNA's statutory language mirrors that required under the Nebraska Sex Offender Registration Act.[2]  Specifically, a sex offender must provide:

> (1) The name of the sex offender (including any alias used by the individual).
>
> (2) The Social Security number of the sex offender.
>
> (3) The address of each residence at which the sex offender resides or will reside.
>
> (4) The name and address of any place where the sex offender is an employee or will be an employee.
>
> (5) The name and address of any place where the sex offender is a student or will be a student.
>
> (6) The license plate number and a description of any vehicle owned or operated by the sex offender.

42 U.S.C. § 16914(1-6).  Compare to Ex. 106 (Neb. Admin. Code, Title 272, Ch. 19 (December 9, 2003), § 006.06; Ex. 107 ("State of Nebraska Sex Offender Registration Change of Information"

---

[2]In addition to the specific information listed in 42 U.S.C. § 16914 as recited in the text above, 42 U.S.C. § 16914(7) requires sex offenders to provide "[a]ny other information required by the Attorney General."  As explained previously, the United States Attorney General has not finalized and adopted guidelines and regulations for implementing SORNA, so no such "other information" is now required.

form).  SORNA sets periodic requirements for obtaining current photographs from sex offenders, (42 U.S.C. § 16916), and sex offenders are required to keep their registrations current for no less than fifteen years, and up to the life of the offender, depending on the "tier" level of offense.  42 U.S.C. § 16915(a).

The Attorney General is required to maintain at the Federal Bureau of Investigation the "National Sex Offender Registry," a national database of all registered sex offenders, (42 U.S.C. § 16919); maintain a public website that includes relevant sex offender information, (42 U.S.C. § 16920); and implement multi-jurisdictional training, conferences, and meetings to facilitate the implementation of SORNA.  The Attorney General is required to develop computer software to assist the states' and other jurisdictions' efforts in establishing and operating uniform sex offender registries and internet sites.  The deadline for creating this software is July 27, 2008.  42 U.S.C. § 16923. Each jurisdiction is required to implement SORNA on or before July 27, 2009 or within one year after the computer software is developed, whichever occurs later.  42 U.S.C. § 16924.  The Attorney General is authorized to award grants to jurisdictions for offsetting the costs of implementing SORNA.  42 U.S.C. § 16926.

The Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") was created to administer the standards for the sex offender registration and notification program under SORNA, administer the congressionally authorized grant programs for implementing SORNA, and cooperate with and provide technical assistance to public and private entities related to sex offender registration and notification for the "protection of children or other members of the public

12

from sexual abuse or exploitation." 42 U.S.C. § 16945. See Ex. 104.

SORNA requires jurisdictions to notify the Attorney General and appropriate law enforcement agencies if a sex offender fails to comply with the federal sex offender registration requirements, and the Attorney General and law enforcement agencies are required to respond by taking appropriate action to enforce compliance. 42 U.S.C. § 16922. See also, 42 U.S.C. § 16941 (allowing appropriation of federal funds and resources to "assist jurisdictions in locating and apprehending sex offenders who violate sex offender registration requirements."). To that end, the Adam Walsh Child Protection and Safety Act amended Title 18 of the United States Code by enacting 18 U.S.C. § 2250 and enhancing the criminal penalties for failing to register as required under SORNA. See 18 U.S.C. § 2250 (Pub. L. No. 109-248, § 141, 120 Stat. 587, 601 (July 27, 2006)). A person convicted of violating SORNA can be fined and/or imprisoned for up to ten years. 18 U.S.C. § 2250(a).

C.   <u>Defendant's Arguments for Dismissal</u>.

The defendant has raised the following arguments in support of his motion to dismiss:

- The government cannot prove the defendant violated SORNA's registration requirements during the time of his interstate travel because SORNA did not apply to the defendant until the Attorney General issued its interim rule on February 28, 2007, and the defendant's only interstate travel occurred prior to that date.

- Congress violated the non-delegation doctrine by unlawfully authorizing the Attorney General to determine who could be prosecuted under SORNA.

13

- Prosecuting the defendant under 18 U.S.C. § 2250
  violates the Ex Post Facto Clause because at the time
  of defendant's travel to Nebraska, he was required to
  register under Utah and/or Nebraska law, but not under
  SORNA, and the potential prison sentence for violating
  SORNA exceeds the potential sentence for violating
  either Nebraska's or Utah's sex offender registration
  law.

- Nebraska has never implemented SORNA's sex offender
  registration requirements, and therefore the defendant
  could not "knowingly" violate SORNA, and any
  prosecution under SORNA violates due process because he
  lacked notice of SORNA's registration requirements.

- Congress lacked authority under the Commerce Clause to
  enact SORNA or 18 U.S.C. § 2250 because sex offenses
  are purely local in nature, have no economic or
  commercial character, and do not impact or affect
  commerce.

- Congress' attempt to compel the states to adopt and
  enforce the requirements of a federal sex offender
  registration program violates the Tenth Amendment.


Upon review of each of these claims, I recommend that the
defendant's motion to dismiss be denied.

1.   The Non-Delegation Doctrine, and the Ex Post Facto
     Clause.

Defendant's claims regarding Congress' alleged violation of
the non-delegation doctrine and the Ex Post Facto Clause are
interrelated and will be discussed together.

The defendant argues that 42 U.S.C. § 16913(d) violates the
non-delegation doctrine because Congress cannot lawfully delegate
to the Attorney General the authority to determine who can be
prosecuted under SORNA.  The defendant claims that even if 42
U.S.C. § 16913(d) is not an unlawful delegation of authority to

14

the executive branch, under the undisputed facts of this case, the government cannot prove the defendant violated SORNA at the time traveled in interstate commerce.  The defendant states that since his conviction for a sex offense occurred "before July 27, 2006," (42 U.S.C. § 16913(d)), and the Attorney General waited until February 28, 2007 to issue an interim rule stating that SORNA applied to sex offenders convicted prior to SORNA's enactment, (28 C.F.R. § 72.3), when defendant traveled to Nebraska on February 6, 2007, the SORNA registration requirements were not applicable to him.  He therefore claims the indictment against him must be dismissed under the Ex Post Facto Clause because he cannot be convicted of violating a law that did not apply to him at the time of his interstate travel.

    The defendant's claim under the non-delegation doctrine and the Ex Post Facto Clause rests, in the first instance, on the court's interpretation of the meaning of 42 U.S.C. § 16913, and the scope of authority granted to the Attorney General under that statute.  The underlying question is when did the defendant become obligated to register as a sex offender under SORNA.  42 U.S.C. § 16913 outlines SORNA's "Registry Requirements for Sex Offenders." 42 U.S.C. § 16913(a) states:

    A sex offender shall register, and keep the
    registration current, in each jurisdiction where the
    offender resides, where the offender is an employee,
    and where the offender is a student.  For initial
    registration purposes only, a sex offender shall also
    register in the jurisdiction in which convicted if such
    jurisdiction is different from the jurisdiction of
    residence.

42 U.S.C. § 16913(b) further describes a sex offender's initial registration requirements, stating the offender must initially register before completing the sentence imposed for a sex

15

offense, or if a prison sentence is not imposed, within three days after sentencing.  Under 42 U.S.C. § 16913(d):

> The Attorney General shall have the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

The defendant claims he was not required to register under SORNA until the Attorney General issued its interim rule on February 28, 2007.  Several cases support the defendant's argument, holding that under the plain and unambiguous language of 42 U.S.C. § 16913(d), the Attorney General was required to address two issues:  1) whether SORNA applies to offenders convicted prior to SORNA's enactment, and 2) the rules applicable to offenders unable to comply with the initial registration requirements described in 42 U.S.C. 16913(b).  See U.S. v. Patterson, 2007 WL 2904099, 5 (D. Neb. Sept. 21, 2007)(Gossett, M.J.), aff'd 2007 WL 3376732 (D. Neb. Nov. 8, 2007((Bataillon, J.).  See also, U.S. v. Gould, 526 F. Supp. 2d 538, 547-48 (D. Md. 2007); U.S. v. Gill, 520 F. Supp. 2d 1341, 1343 (D. Utah 2007); U.S. v. Sallee, 2007 WL 3283739, at *1 (W.D. Okla. Aug. 13, 2007); U.S. v. Muzio, 2007 WL 2159462, at *4 (E.D. Mo. July 26, 2007); U.S. v. Kapp, 487 F. Supp. 2d 536, 541 (M.D. Pa. 2007).  These cases hold that until the Attorney General issued an interim rule stating that SORNA was applicable to sex offenders convicted before July 27, 2006, these "past offenders" were not subject to SORNA's registration requirements. Therefore, past sex offenders who traveled in interstate commerce and failed to register after the enactment of SORNA, but before the Attorney General issued the interim rule, (often referred to

16

as the "gap period"), cannot be prosecuted under 18 U.S.C. §
2250.

Several cases disagree with the defendant's argument,
holding the authority granted to the Attorney General under 42
U.S.C. § 16913(d) is limited to "promulgat[ing] rules which apply
to 'initial registration of sex offenders unable to comply with
subsection (b) of this section,'" (U.S. v. Samuels, 2008 WL
169792, at *8 (E.D. Ky. Jan. 17, 2008)), and § 16913(d) and the
Attorney General's corresponding interim rule do not apply to
defendants who were able to comply with a state's initial
registration requirements when SORNA was enacted.  See id.; U.S.
v. Elliott, 2007 WL 4365599, at *6 (S.D. Fla. Dec. 13, 2007);
Cardenas, 2007 WL 4245913, at *8; U.S. v. Beasley, 2007 WL
3489999, at *9 (N.D. Ga. Oct. 10, 2007); U.S. v. Lovejoy, 516 F.
Supp. 2d 1032, 1037 (D.N.D. 2007); U.S. v. May, 2007 WL 2790388,
at *4 (S.D. Iowa Sept. 24, 2007); U.S. v. Roberts, 2007 WL
2155750, at *2 (W.D. Va. July 27, 2007); U.S. v. Mason, 510 F.
Supp. 2d 923, 932 (M.D. Fla. 2007); Hinen, 487 F. Supp. 2d at
751-52.  See also, U.S. v. Hacker, 2008 WL 312689, at *2 (D. Neb.
Feb. 1, 2008)(Smith Camp, J.)(citing cases narrowly interpreting
the Attorney General's authority under § 16913(d) as supporting
denial of defendant's motion to dismiss under the non-delegation
doctrine).

Some courts have narrowly interpreted § 16913(d) as
mandated under the "plain reading" of its language.  See e.g.,
Hinen, 487 F. Supp. 2d at 751; May, 2007 WL 2790388 at *4.
Others have concluded that, standing alone, § 16913(d) appears to
grant broad authority to the Attorney General, but this statutory
subsection must be narrowly interpreted when considered in the
context of § 16913 as a whole.  Cardenas, 2007 WL 4245913 at *8.

17

Still other courts have determined § 16913(d) is ambiguous and must be narrowly interpreted to effectuate Congress' intent as determined from the overall statutory scheme, including the title "Initial registration of sex offenders unable to comply with subsection (b) of this section" used by Congress to describe subsection (d) of § 16913.  <u>Elliott</u>, 2007 WL 4365599, at *6; <u>Beasley</u>, 2007 WL 3489999, at *9.

The courts cannot agree on the meaning of § 16913, or even whether it is ambiguous.  42 U.S.C. § 16913 is not a model of clarity.

The starting point in interpreting a statute is always the language of the statute itself.  <u>U.S. v. Mendoza-Gonzalez</u>, 2008 WL 819161, at *2 (8th Cir. March 28, 2008); <u>Doe v. Department of Veterans Affairs of U.S.</u>, 2008 WL 613128, at *3 (8th Cir. March 7, 2008).  When interpreting a statute, the court first analyzes whether congressional intent is clear from the plain language of the statute, and if the intent is clear, the judicial inquiry ends unless exceptional circumstances dictate otherwise. <u>Schumacher v. Cargill Meat Solutions Corp</u>., 515 F.3d 867, 871 (8th Cir. 2008); <u>In re Operation of Missouri River System Litigation</u>, 418 F.3d 915, 917 -918 (8th Cir. 2005); <u>Citicasters v. McCaskill</u>, 89 F.3d 1350, 1354-55 (8th Cir. 1996).  The court's role is to "interpret and apply statutes as written, for the power to redraft laws to implement policy changes is reserved to the legislative branch."  <u>Doe</u>, 2008 WL 613128 at *3.

"If on the other hand, the language of a statute is ambiguous, [the court should] consider 'the purpose, the subject matter and the condition of affairs which led to its enactment.'" <u>Norwest Bank of North Dakota, N.A. v. Doth</u>, 159 F.3d 328, 333

18

(8th Cir. 1998)(quoting <u>U.S. v. S.A.</u>, 129 F.3d 995, 998 (8th Cir. 1997)).  "When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law."  <u>Williams v. Regency Financial Corp</u>., 309 F.3d 1045, 1048 (8th Cir. 2002)(quoting <u>S.A</u>., 129 F.3d at 998).

> Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

<u>Smith v. U.S.</u>, 508 U.S. 223, 233 (1993).

42 U.S.C. § 16913(a) unambiguously requires every sex offender, defined as "an individual who was convicted of a sex offense," (42 U.S.C. § 16911(1)), to register and keep his or her registration current in the jurisdiction where the offender resides, is employed, or is a student.  "The plain language of 42 U.S.C. § 16913(a) does not make a temporal distinction as to the date of a sex offender's conviction.  Instead, the statute 'imposes its requirements on sex offenders, without qualification. . . .'"  <u>Cardenas</u>, 2007 WL 4245913, at *6 (quoting <u>Roberts</u>, 2007 WL 2155750, at *2).

Subsection (b) of § 16913 explains the registration requirements for those sex offenders serving a prison sentence for a sex offense, and those offenders whose sentence did not include imprisonment.  42 U.S.C. § 16913(b) is a prospective statute; that is, as of the date of SORNA's enactment, it was impossible for some sex offenders--specifically, previously convicted offenders who had already served their prison sentence,

19

or who were not sentenced to prison but were sentenced more than
three days earlier--to comply with the registration requirements
of § 16913(b).

Subsection (d) of § 16913 addressed this problem, and
further addressed the registration of previously convicted sex
offenders who were not obligated or able to register under the
law of their jurisdiction of residence, employment, or schooling
when SORNA was enacted.  The purpose of § 16913(d) was to
harmonize the disparate state, tribal, territorial, and District
of Columbia registration systems into a comprehensive national
sex offender system.  Cardenas, 2007 WL 4245913 at *8; 42 U.S.C.
§ 16911(10)(defining "jurisdiction").  42 U.S.C. § 16913(d)
delegated this considerable challenge to the Attorney General by
authorizing the Attorney General to craft regulations specifying
the applicability of SORNA to "sex offenders convicted before
July 27, 2006 or its implementation in a particular
jurisdiction," and to prescribe rules governing the registration
of "any such sex offenders" and "for other categories of sex
offenders" unable to comply with subsection (b) of this section.

Although some jurisdictions have interpreted the language of
§ 16913(d) as applying to "past offenders" and "offenders unable
to register" as separate and distinct categories, (see e.g.,
Sallee, 2007 WL 3283739, at *1; Muzio, 2007 WL 2159462, at *4;
Kapp, 487 F. Supp. 2d at 541), the language structure of 42
U.S.C. § 16913(d) can also be interpreted to mean the Attorney
General was authorized to create rules applicable to only those
sex offenders who were unable to register under SORNA, whether
they be offenders "convicted before July 27, 2006" or included
within "other categories of sex offenders."

20

The court must determine which of these meanings of 42 U.S.C. § 16913(d) produces a substantive effect compatible with the remainder of SORNA.  Smith, 508 U.S. at 233.  SORNA defines a "sex offender" as "an individual who was convicted of a sex offense," (42 U.S.C. § 16911(1)(emphasis added)), indicating SORNA's reach includes those convicted of sex offenses in the past.  Interpreted in the context of § 16913 as a whole, as of July 27, 2006, SORNA required previously convicted sex offenders to register in the jurisdiction where they lived, worked, or went to school, (42 U.S.C. § 16913(a)), and the Attorney General was authorized to adopt regulations governing the registration requirements for those who were unable to do so.  42 U.S.C. § 16913(d).  This interpretation of § 16913(d) is consistent with SORNA's overall statutory scheme, and effectuates its underlying purpose of "apply[ing] SORNA to the large number of persons falling within the definition of sex offender but who were convicted prior to SORNA's enactment."  Hinen, 487 F. Supp. 2d at 752-53.

> Congress's primary motivation in enacting this legislation was to do what the defendant claims SORNA does not do--regulate all sex offenders, regardless of the dates of their convictions.  Indeed, it was Congress's desire to create a comprehensive and uniform registration system among the states to ensure offenders could not evade requirements by simply moving from one state to another.

Hinen, 487 F. Supp. 2d at 752-53.  "It would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements," (Hinen, 487 F. Supp. 2d at 753), yet exempt those same offenders from a federal requirement of registering in accordance with then-existing state law pending additional rule-making by the Attorney General.

21

As applied to defendant Zuniga, at the time SORNA was
enacted on July 27, 2006, this defendant was required to maintain
a current sex offender registration in accordance with Utah and
Nebraska law.  42 U.S.C. § 16913(a) made this obligation a
federal requirement under SORNA effective July 27, 2006.
Defendant Zuniga's obligation to register under SORNA was neither
created nor altered by the interim rule adopted by the Attorney
General on February 28, 2007.  Elliott, 2007 WL 4365599, at *6
(S.D. Fla. Dec. 13, 2007).

If the "[d]efendant has not been charged under rules
promulgated by the Attorney General," but rather "has been
charged by Congress and its legislative mandate that is codified
in § 2250," he lacks standing to raise the non-delegation issue
as a basis for dismissal.  U.S. v. Gonzales, 2007 WL 2298004, at
*12 (N.D. Fla. Aug. 9, 2007).  Since defendant Zuniga is charged
under SORNA for failing to comply with the sex offender
registration requirements enacted by Congress, not the interim
rule issued by the Attorney General in accordance with the
authority granted under 42 U.S.C. § 16913(d), he lacks standing
to challenge his indictment as arising from Congress' unlawful
delegation of authority to the Attorney General in violation of
the non-delegation doctrine.

Even assuming the defendant has standing to challenge his
indictment under the non-delegation doctrine, this challenge must
fail.  Congress may delegate its legislative power to the
executive branch if it "lay[s] down by legislative act an
intelligible principle to which the person or body authorized to
[act] is directed to conform."  J.W. Hampton, Jr. & Co. v. United
States, 276 U.S. 394, 409 (1928).  However, the non-delegation
doctrine does not "prevent Congress from obtaining the assistance

22

of its coordinate Branches." <u>Mistretta v. U.S.</u>,  488 U.S. 361,
372 (1989).  "In determining what [Congress] may do in seeking
assistance from another branch, the extent and character of that
assistance must be fixed according to common sense and the
inherent necessities of the government co-ordination." <u>Id</u>.
(quoting <u>J.W. Hampton</u>, 276 U.S. at 406).  Congress can delegate
its legislative power provided it identifies by legislative act
an intelligible principle governing the extent of authority
delegated. <u>Mistretta</u>, 488 U.S. at 372.  Congress' delegation is
constitutionally sufficient if the legislation "clearly
delineates the general policy, the public agency which is to
apply it, and the boundaries of [the] delegated authority."
<u>Mistretta</u>, 488 U.S. at 372-373.

    In enacting 42 U.S.C. § 16913(d), Congress authorized the
Attorney General to create gap-filling provisions to insure
SORNA's statutory purpose is effectuated when sex offenders fall
outside the purview of Section 16913(b). <u>Mason</u>, 510 F. Supp. 2d
at 928.  The courts have uniformly held that 42 U.S.C. § 16913(d)
sufficiently identifies the "intelligible principle governing the
extent of authority delegated" to the Attorney General, and does
not unlawfully cede to the Attorney General the core legislative
function of defining federal crimes.  See <u>Hacker</u>, 2008 WL 312689,
at *2.  See also, <u>U.S. v. Utesch</u>, 2008 WL 656066, at *10 (E.D.
Tenn. March 6, 2008); <u>U.S. v. Howell</u>, 2008 WL 313200, at *8 (N.D.
Iowa Feb. 1, 2008); <u>Samuels</u>, 2008 WL 169792, at *9; <u>U.S. v.
LeTourneau</u>, 2008 WL 112105, at *6 (S.D. Tex. Jan. 6, 2008); <u>U.S.
v. Dixon</u>, 2007 WL 4553720, at *5-6 (N.D. Ind. Dec. 18, 2007);
<u>Gould</u>, 526 F. Supp. 2d at 545-46; <u>Cardenas</u>, 2007 WL 4245913, at
*13; <u>U.S. v. Pitts</u>, 2007 WL 3353423, at *7-8 (M.D. La. Nov. 7,
2007); <u>U.S. v. Gill</u>, 520 F. Supp. 2d at 1349; <u>U.S. v. Ambert</u>,
2007 WL 2949476, at *7 (N.D. Fla. Oct. 10, 2007); <u>Lovejoy</u>, 516 F.

                                23

Supp. 2d at 1035; <u>U.S. v. Kelton</u>, 2007 WL 2572204, at *1 (M. D.
Fla. Sept. 5, 2007); <u>U.S. v. Sawn</u>, 2007 WL 2344980, at *3 (W.D.
Va. Aug. 15, 2007); <u>Gonzales</u>, 2007 WL 2298004, at *11;; <u>Mason</u>,
510 F. Supp. 2d at 927-28; <u>Hinen</u>, 487 F. Supp. 2d at 753; <u>U.S. v.
Madera</u>, 474 F. Supp. 2d 1257, 1261 (M.D. Fla. 2007).  But see,
<u>U.S. v. Aldrich</u>, 2008 WL 427483, at *6 n. 5 (D. Neb. Feb. 14,
2008)(Bataillon, J.)(expressing concern that 42 U.S.C. § 16913(d)
violates the non-delegation doctrine by allowing the Attorney
General to legislate the length of time, scope, and reach of the
retroactive application of SORNA).

    The defendant claims the indictment against him violates his
rights under the Ex Post Factor Clause "because it increases the
punishment for failure to register above that which was
originally prescribed at the time of his conduct."  Filing 1, p.
6.  The defendant claims that since, at the time of his February
6, 2007 interstate travel, his failure to maintain a current sex
offender registration violated only Nebraska and/or Utah law, and
the potential sentence under SORNA exceeds that which could be
imposed under either state's law, the indictment must be
dismissed on ex post facto grounds.  He further argues that 18
U.S.C. § 2250 violates the Ex Post Facto clause "because it
punishes Zuniga for an act that was not punishable at the time it
was committed."

    "The ex post facto clause is violated when a law defining a
crime or increasing punishment for a crime, is applied to events
that occurred before its enactment, to the 'disadvantage' of the
offender."  <u>U.S. v. Carter</u>, 490 F.3d 641, 643 (8th Cir.
2007)(citing <u>Collins v. Youngblood</u>, 497 U.S. 37, 43 (1990), and
<u>Weaver v. Graham</u>, 450 U.S. 24, 29 (1981)).  For the reasons
already discussed, the underlying premise of defendant's Ex Post

Facto argument is incorrect; the defendant is not being
prosecuted under 18 U.S.C. § 2250 for acts that did not violate
SORNA when they occurred.

As of the date SORNA was enacted, July 27, 2006, defendant
Zuniga was required to register under not only state law, but
SORNA.  SORNA created a new federal crime, an essential element
of which is interstate travel.  Since the defendant was charged
under the statutory language of SORNA, which was enacted before
he traveled to Nebraska on February 6, 2007, he cannot claim his
rights under the Ex Post Facto Clause have been violated by
retroactive application of the Attorney General's interim rule.
As applied to the indictment against defendant Zuniga, the
interim rule is superfluous.  See May, 2007 WL 2790388, at *4
(holding that since the defendants had initially registered under
state law before SORNA's enactment, "the fact Defendants traveled
in interstate commerce during the "gap" period between SORNA's
enactment and the Attorney General's interim ruling is of no
consequence.")

Under the statutory language of SORNA, federal law is
violated when a sex offender travels in interstate commerce and
fails to maintain or update his or her sex offender registration
as required under 42 U.S.C. 16913(a).  Cardenas, 2007 WL 4245913,
at *13; Hinen, 487 F. Supp. 2d at 750.  The indictment alleges
each element for prosecution under 18 U.S.C. § 2250 occurred
after SORNA was enacted.  Although the potential punishment
defendant Zuniga faces under the pending federal indictment does
exceed that which could be imposed for similar alleged conduct
under either Nebraska or Utah law, the defendant is not being
prosecuted under state law.  He is being prosecuted for violating
the federal crime embodied in 18 U.S.C. § 2250.  This violation

25

is separate and distinct from the defendant's underlying state
sex offender conviction or any potential state charge for failing
to comply with sex offender registration requirements.  Should
the defendant be convicted, any punishment imposed will be for
violating SORNA following its enactment.  Accordingly, the
defendant is not entitled to dismissal of his indictment under
the Ex Post Facto Clause.  U.S. v. Villagomez,  2008 WL 918639,
at *3 (W.D. Okla. April 2, 2008)("[T]he application of Section
2250 to a sex offender who fails to register or to update a
registry after July 27, 2006, does not punish pre-SORNA conduct
in violation of the Ex Post Facto Clause."); Elliott, 2007 WL
4365599, at *6-7 (holding that although retroactive application
of SORNA may violate the Ex Post Facto Clause, the defendant's
indictment raised no Ex Post Facto violation because defendant's
travel occurred in November 2006, he was required to register
under SORNA at that time, and therefore SORNA was not applied
retroactively to this defendant).

     The defendant's claims for dismissal under the non-
delegation doctrine and the Ex Post Facto Clause should be
denied.

        2.   Lack of "knowledge" and lack of sufficient notice as
             required under the Due Process Clause.

     The defendant argues:

     Section 2250 makes it a crime to "knowingly fail to
     register or update a registration as required by the
     Sex Offender Registration and Notification Act."
     Zuniga's conduct took place before SORNA was made
     applicable to him by the Attorney General on February
     28, 2007.  Thus, it was impossible for him to
     "knowingly" fail to register "as required by" SORNA.
     Because Zuniga had no notice or knowledge of the

26

registration requirements, he cannot be prosecuted
under § 2250.

Filing 21, p. 18.  The defendant argues that since he was unaware
of the federal sex offender registration law or that he could be
prosecuted under both state and federal law for failing to update
his sex offender registration, 1) he could not "knowingly"
violate SORNA, and 2) he lacked the notice required under the Due
Process Clause.

Although 42 U.S.C. § 16917(a) states that an official must
give notice to a sex offender shortly before his release from
custody, or immediately after sentencing if the offender is not
sentenced to prison, receipt of notice as required under §
16917(a) is not an element of a 18 U.S.C. § 2250 offense.
Samuels, 2008 WL 169792, at *4; Dixon, 2007 WL 4553720, at *4;
Lovejoy, 516 F. Supp. 2d at 1037.  The indictment against the
defendant alleges the defendant "knowingly" violated SORNA.
Therefore, the indictment itself alleges sufficient facts to
support the defendant's prosecution.  Any further determination
as to whether the defendant possessed the requisite knowledge is
a factual issue for trial and should not be decided on a motion
to dismiss.  Cardenas, 2007 WL 4245913, at *14.

The court acknowledges, however, the considerable overlap in
the parties' arguments and the relevant case law regarding the
factual issue of whether a defendant "knowingly" failed to
register as required under SORNA, and whether the defendant was
afforded sufficient "notice" as mandated by the Due Process
Clause.  Based on the arguments advanced by the defendant and the
case law addressing this issue, the outcome of the defendant's
due process challenge rests on whether the defendant was entitled
to notice that failing to register in compliance with state law

27

could lead to federal prosecution, or whether notice that his
conduct was illegal was sufficient to afford due process.

A defendant can violate SORNA "by failing to register or
update a SORNA imposed registration obligation or a registration
obligation imposed by another law." U.S. v. Marcantonio, 2007 WL
2230773, at *2 (W.D. Ark. July 31, 2007).  The defendant "need
not, to have committed the federal crime, have been told by some
official that he had to register pursuant to SORNA." Dixon, 2007
WL 4553720, at *4.  See also, Hinen, 487 F. Supp. 2d at 754 ("The
fact that the defendant may not have been advised of the specific
requirements of SORNA is not determinative.").

Due process does not require that the defendant receive
notice that his conduct violates a specific statute or federal
law.  "Few offenders have ever had relevant sections of the U.S.
Code read to them before committing their crimes, yet they are
expected to comply with it even so." Roberts, 2007 WL 2155750,
at *2.  "If failure to have specific knowledge of the particular
statute you have been accused of violating were a prerequisite to
conviction, there would rarely, if ever, be a conviction."
Samuels, 2008 WL 169792, at *4.  The fact that the defendant was
unaware that federal charges could be filed if he failed to
update his registration is of no consequence in a due process
analysis. Samuels, 2008 WL 169792, at *5.  "Ignorance of a new,
independent obligation under federal law (SORNA) to register as a
sex offender is simply no excuse." Lovejoy, 516 F. Supp. 2d at
1038.[3]

---

[3]As to the definition of "knowingly," "Congress' use of the
word "knowingly" in a criminal statute aimed at regulating
dangerous objects does not itself abrogate the ancient maxim that
ignorance of the law is no excuse." U.S. v. Udofot, 711 F.2d
831, 836 (8th Cir. 1983).  The court looks to the statutory

The Due Process Clause does not require notice that failure to register as a sex offender violates the federal law set forth in SORNA.  Rather, sufficient due process is afforded if the defendant had notice that failing to register or update his sex offender registration was illegal.  See Howell, 2008 WL 313200, at *8 (holding that a defendant who registered as a sex offender in Michigan, but failed to register upon moving to Iowa had sufficient notice his conduct was illegal, particularly since a defendant "is presumed to know the law"); Samuels, 2008 WL 169792, at *4 (denying defendant's due process claim where the defendant received no notice of the SORNA requirements, but knew he was required to update his sex offender registration under New York law); Dixon, 2007 WL 4553720, at *4 (denying defendant's due process challenge even though SORNA was enacted after he traveled and failed to register in another state and neither state had implemented the SORNA requirements); Gould, 526 F. Supp. 2d at 544-545 (holding defendant's prior knowledge of a duty to register under state law was effective notice under SORNA and defeated his due process claim); Pitts, 2007 WL 3353423, at *7)(holding due process requirements were met where the defendant knew he was required to register under state law); Lovejoy, 516 F. Supp. 2d at 1038 (denying defendant's due process challenge where the defendant knew he was required to register as a sex offender under North Dakota law, and his failure to do so occurred after SORNA was enacted and the Attorney General published its interim rule); May, 2007 WL 2790388, at *6 (denying a due process challenge and holding ignorance of the law was no excuse where the defendants knew they had an obligation to keep

---

language and, if necessary, legislative history to determine if the government must prove specific intent; that is, that the defendant knowingly violated the law as opposed to knowingly committed an act deemed illegal under the law.

their state sex offender registrations current and received information regarding those registration obligations); U.S. v. Kent, 2007 WL 2746773, at *1 (S.D. Ala. Sept. 20, 2007)(denying defendant's due process claim where, although he received no notice of SORNA's requirements, the defendant received notice that failing to register was illegal); Marcantonio, 2007 WL 2230773, at *2 (denying due process challenge where the defendant knew he was under an obligation to register under state law); Roberts, 2007 WL 2155750, at *2 (denying defendant's motion to dismiss for lack of due process where the defendant was not aware of SORNA, but knew he was required to update his sex offender registration under state law and failed to do so upon moving to another state); Hinen, 487 F. Supp. 2d at 754 (holding those convicted of sex offenses are placed on constructive notice that they may be subjected to future regulations because of the nature of their criminal conviction). But see, U.S. v. Aldrich, 2008 WL 427483, at *5 (D. Neb. Feb. 14, 2008)(Bataillon, J.)(stating SORNA indictment violated due process where the defendant's conviction occurred prior to enacting SORNA, the defendant ignored annual notices to update or confirm Nebraska's sex offender registry information, Nebraska had not amended its law to comply with SORNA, there was no evidence the defendant knew of SORNA, and he did not actively fail to register).

Based on the evidence presented in this case, it is undisputed that both Utah and Nebraska law required the defendant to register as a sex offender and update that registration when his residential address changed. The disclosure requirements of Nebraska law are substantially the same as those imposed under SORNA, although Nebraska allows five days for updating a registration while SORNA permits only three days, and the length and frequency of mandated registration updates may be greater

30

under SORNA.  The defendant received written notice in December
2005 that failing to comply with the Utah's sex offender
registration requirements could expose him to criminal
prosecution.  This written notice specifically advised the
defendant that he must register with the appropriate out-of-state
agency if he moved across state lines.  He received a written
reminder of his Utah registration requirements in July 2006.

Defendant Zuniga received sufficient notice that failing to
maintain a current sex offender registration was illegal and
could warrant criminal prosecution.  Irrespective of whether
"SORNA" or the federal requirements of SORNA were ever mentioned
by any state official, referenced in the Utah documents the
defendant received, or incorporated into either Utah's or
Nebraska's statutes, due process principles do not foreclose this
prosecution or justify dismissal of the indictment.

    3.    The Commerce Clause.

The defendant claims Congress cannot constitutionally
require Zuniga to register under SORNA.  He argues that under
modern Commerce Clause jurisprudence, the indictment must be
dismissed because:  1) "Congress does not have the power to
impose registration requirements on individual citizens convicted
of purely intrastate offenses," (filing 21, p. 10); 2) "SORNA's
registration requirements clearly do not affect the channels of
interstate commerce," (filing 21, p. 11); 3) "SORNA requires sex
offenders to register regardless of whether they travel
interstate," (filing 21, p. 11), and therefore SORNA was not
enacted to "regulate and protect the instrumentalities of
interstate commerce, or persons or things in interstate
commerce," (filing 21, p. 11); and 4) SORNA's registration

requirements have no economic character or effect on interstate commerce, are imposed irrespective of whether the defendant traveled in interstate commerce, and SORNA contains no findings explaining any connection between sex offender registration and interstate commerce, (filing 21, pp. 11-12).  The defendant cites U.S. v. Lopez, 514 U.S. 549 (1995), and U.S. v. Morrison, 529 U.S. 598 (2000) in support of his argument.

Article I, Section 8 of the Constitution grants Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes."  U.S. Const., art. I. § 8, cl. 3.  The Supreme Court has defined three categories of activity that Congress may regulate pursuant to its Commerce Clause authority:  (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce."  Lopez, 514 U.S. at 558-59.  "The Constitution requires a rational basis, but nothing more than a rational basis, to conclude that targeted activity substantially affects interstate commerce."  Dixon, 2007 WL 4553720, at *5 (citing Gonzales v. Raich, 545 U.S. 1 (2005)).

This court has previously held that SORNA's registration requirements and the related penalty provision of 18 U.S.C. § 2250 do not violate the Commerce Clause, (U.S. v. Hacker, 2008 WL 312689, at *2 (D. Neb. Feb. 1, 2008)(Smith Camp, J.)), and district courts throughout the nation have uniformly rejected the defendant's Commerce Clause arguments.  See e.g., Utesch, 2008 WL 656066, at *14; Howell, 2008 WL 313200, at *7-8; Dixon, 2007 WL 4553720, at *5; Elliott, 2007 WL 4365599, at *3; Gould, 526 F. Supp. 2d at 547; U.S. v. Brown, 2007 WL 4372829, at *3 (S.D.N.Y.

Dec. 12, 2007); <u>U.S. v. Adkins</u>, 2007 WL 4335457, at *7 (N.D. Ind. Dec. 7, 2007); <u>Cardenas</u>, 2007 WL 4245913, at * 12; <u>Pitts</u>, 2007 WL 3353423, at *4; <u>Ambert</u>, 2007 WL 2949476, at *4; <u>Beasley</u>, 2007 WL 3489999, at *9; <u>May</u>, 2007 WL 2790388, at *7; <u>Gonzales</u>, 2007 WL 2298004, at *9; <u>Mason</u>, 510 F. Supp. 2d at 932; <u>Hinen</u>, 487 F. Supp. 2d at 757-8; <u>U.S. v. Templeton</u>, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7, 2007); <u>Madera</u>, 474 F. Supp. 2d at 1265.

Congress' intent in enacting SORNA was to create a mechanism for tracking sex offenders as they move between states. <u>Hacker</u>, 2008 WL 312689, at *2; <u>May</u>, 2007 WL 2790388, at *7. SORNA sets forth uniform requirements for the collection of information by state sex offender registries, the intent being to protect the public by creating a comprehensive national sex offender registry containing information accessible to citizens and law enforcement officers in every state. Congress' public safety concerns were not unfounded. "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." <u>McKune v. Lile</u> 536 U.S. 24, 33 (2002)(citing University of New Hampshire, Crimes Against Children Research Center, Fact Sheet 5; Sex Offenses 24, 27 & U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997)). Congress was concerned with the possibility that sex offenders were "slipping through the cracks of the disparate 50 state registration systems," (<u>Roberts</u>, 2007 WL 2155750, at *2), and SORNA's national registry is intended to ensure that sex offenders cannot evade an individual state's sex offender registration laws by merely relocating to another state. <u>Hinen</u>, 487 F. Supp. 2d at 753.

Congress is empowered under the Commerce Clause "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." <u>Lopez</u>, 514 U.S. at 558. "[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained and is no longer open to question." <u>Caminetti v. U.S.</u>, 242 U.S. 470, 491 (1917)(cited with approval in <u>Lopez</u>, 514 U.S. at 558).

> Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin.  In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce.

<u>Brooks v. U.S</u>., 267 U.S. 432, 436-437 (1925).

Moreover, the federal government has jurisdiction to prosecute under 18 U.S.C. § 2250(a)(2)(B) only if a person required to register under SORNA "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country," (18 U.S.C. § 2250(a)(2)(B)), and as applied to the indictment against defendant Zuniga, interstate travel is a requisite element of the government's case.  Contrary to the defendant's argument, federal prosecution under § 2250(a)(2)(B) does not reach purely intrastate movement of sex offenders who fail to comply with a state's sex offender registration requirements.

Prosecution under 18 U.S.C. § 2250(a)(2)(B) focuses on the movement of potentially dangerous persons between states, thus

providing both the rational basis and the interstate nexus found
lacking in <u>Lopez</u> and <u>Morrison</u>.  SORNA's sex offender registry
requirements serve to facilitate development of a national
registry to monitor the interstate movements of sex offenders,
the purpose being to protect the public from sex offenders whose
interstate travel may thwart any one state's ability to monitor
their movement and activities.  Consistent with every court
decision found that addresses the issue, I likewise conclude
Congress' enactment of SORNA and the related penalty provisions
of 18 U.S.C. § 2250 did not exceed the authority granted under
the Commerce Clause.  The defendant is not entitled to dismissal
of the indictment based on an alleged violation of the Commerce
Clause.

    4.   The Tenth Amendment.

    The defendant seeks dismissal of the indictment because
"SORNA's registration requirements, which impose a federal
obligation on offenders to register in individual state sex
offender registries, are an unconstitutional encroachment
of federal power on state sovereignty."  Filing 21, p. 21.  Every
federal decision found on this issue has rejected the defendant's
Tenth Amendment argument.  <u>Hacker</u>, 2008 WL 312689, at *2.  See
also, <u>Utesch</u>, 2008 WL 656066, at *14-15; <u>Gould</u>, 526 F. Supp. 2d
at 549; <u>Brown</u>, 2007 WL 4372829, at *3; <u>Cardenas</u>, 2007 WL 4245913,
at *14; <u>Pitts</u>, 2007 WL 3353423, at *9.

    "The powers not delegated to the United States by the
Constitution, nor prohibited by it to the States, are reserved to
the States respectively, or to the people."  U.S. Const. amend.
X.  The federal government "may neither issue directives
requiring the States to address particular problems, nor command
the States' officers, or those of their political subdivisions,

35

to administer or enforce a federal regulatory program." <u>Printz</u>
<u>v. U.S.</u>, 521 U.S. 898, 935 (1997).  Conscripting or commandeering
state officials to administer and enforce a federal regulatory
program violates the Tenth Amendment.  <u>Printz</u>, 521 U.S. at 935.

    The defendant argues that the requirements imposed on the
state by SORNA violate the Tenth Amendment, and therefore his
indictment must be dismissed.  A threshold question is whether
the defendant has standing to raise such a claim.  The United
States Supreme Court has held that a private citizen, acting on
his own behalf and not in an official capacity or on behalf of
the state citizenry, lacks standing to raise a Tenth Amendment
claim.  See <u>Tenn. Elec. Power Co. v. Tenn. Valley Auth</u>., 306 U.S.
118, 144 (1939).  See also <u>Brooklyn Legal Services Corp. v. Legal</u>
<u>Services Corp</u>., 462 F.3d 219, 235 (2d Cir. 2006); <u>Medeiros v.</u>
<u>Vincent</u>, 431 F.3d 25, 34 (1st Cir. 2005).  At least one court has
held that a criminal defendant indicted under SORNA lacks
standing to challenge the indictment on Tenth Amendment grounds.
<u>Beasley</u>, 2007 WL 3489999, at *10.

    The record further establishes that, to date, Nebraska has
not implemented any provision of SORNA, and there is no evidence
that Utah has made any changes in response to SORNA.
Accordingly, the defendant has failed to show that his indictment
arose because Nebraska and/or Utah were "commandeered" or
"conscripted" into complying with SORNA's requirements.  See
<u>Utesch</u>, 2008 WL 656066, at *15 (denying defendant's Tenth
Amendment claim where the defendant was being prosecuted because
he moved from Tennessee to Iowa and failed to comply with Iowa's
re-registration requirements, and neither states' registration
requirements had changed in response to the enactment of SORNA);
<u>Brown</u>, 2007 WL 4372829, at *3 (finding no Tenth Amendment

36

violation where "those individuals required by the Act to register with state sexual offender registries are already obligated to register pursuant to state registration laws").

Not only has the defendant failed to show that either Nebraska or Utah changed its sex offender registration laws to comply with SORNA, but SORNA does not require a state to change its law or procedures to comply with the federal sex offender registration program.  Rather, a state can choose to implement SORNA or, in the alternative, choose not to implement SORNA and receive a reduction in federal funding.  Pursuant to Congress' constitutionally authorized spending power, (U.S. Const. Art. I, § 8, cl. 1), Congress "may attach conditions on the receipt of federal funds. . . 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" South Dakota v. Dole, 483 U.S. 203, 206 (1987)(quoting Fullilove v. Klutznick, 448 U.S. 448, 474 (1980)).  The Tenth Amendment is not violated when the federal government encourages states to enact SORNA's provisions as a condition to receipt of federal funding.  Hacker, 2008 WL 312689, at *2; Gould, 526 F. Supp. 2d at 549; Cardenas, 2007 WL 4245913, at *14.

Finally, SORNA was enacted pursuant to Congress' legitimate exercise of authority under the Commerce Clause.  As such, SORNA does not violate the Tenth Amendment.  U.S. v. Crawford, 115 F.3d 1397, 1401 (8th Cir. 1997).  See also, Hacker, 2008 WL 312689, at *2; Cardenas, 2007 WL 4245913, at *14.

The defendant's motion to dismiss based of the Tenth Amendment, and all other grounds set forth in his motion to dismiss, should be denied.

37

II.   MOTION TO SUPPRESS

    The defendant was interrogated following his arrest and
moves to suppress his statements on Fifth and Sixth Amendment
grounds.  For the reasons discussed below, defendant's motion to
suppress should be denied.

    A.   <u>Fifth Amendment</u>.

    The defendant claims that following his arrest, he was
interrogated by law enforcement in violation of his Fifth
Amendment rights.  He claims he did not knowingly waive his
<u>Miranda</u> rights, and any consent to interrogation was not
knowingly and voluntarily given.  Filing 21, pp. 25-26.  The
defendant also claims his post-arrest interrogation violated his
Sixth Amendment rights because the officers knowingly
interrogated him without counsel present after his grand jury
indictment was filed.  Filing 38.

    The government bears the burden of proving by a
preponderance of the evidence that the defendant's waiver of
<u>Miranda</u> rights was an intentional, voluntary, knowing, and
intelligent relinquishment or abandonment of a known right or
privilege.  <u>U.S. v. Black Bear</u>, 422 F.3d 658 (8th Cir. 2005).  A
waiver is "knowing and intelligent" if it is made with full
awareness of both the nature of the right being abandoned and the
consequences of abandoning the right.  A waiver is "voluntary" if
it was a product of the suspect's free and deliberate choice, and
not the product of intimidation, coercion, or deception.  <u>Thai v.
Mapes</u>,  412 F.3d 970, 977 (8th Cir. 2005).  The ultimate question
is whether the defendant's will to remain silent was overborne

and his capacity for self-determination critically impaired.
U.S. v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002).

The defendant speaks English and freely conversed in English
with Deputy Marshal Jewitt.  Deputy Marshal Jewitt asked the
defendant if he was willing to be interviewed while the defendant
was still at the Gage County Jail.  The defendant agreed to be
interviewed.  When the defendant arrived at the Saline County
Jail, he was again asked if he would answer questions before any
interrogation began.  The defendant again agreed to be
interviewed.  Deputy Marshal Jewitt read the defendant's Miranda
rights aloud, and as each right, the defendant stated he
understood that right.  The defendant did not appear to be
disoriented or under the influence of drugs or alcohol.  The
interview occurred in late-morning and lasted less than thirty
minutes.  The officers present were not in uniform or wearing
weapons, and they did not promise the defendant anything, or
threaten or coerce him to waive his rights or answer questions.
Deputy Marshal Jewitt's questions were forthright, and the tone
of the questioning was professional.

Based on the evidence, I conclude the defendant was not
susceptible to police pressure and his will was not overborne.
See e.g., U.S. v. Jimenez, 478 F.3d 929, 932-33 (8th Cir.
2007)(holding defendant's statement was admissible where the
officer read the defendant her rights, she stated she understood
each of the rights and wanted to waive her rights and speak to
the officer, she was distraught but not under the influence at
the time, and she was not threatened or promised anything to
secure her consent or statements).  Zuniga knowingly,
intelligently, and voluntarily waived his Miranda rights, and his
statements were voluntarily made.  Zuniga's motion to suppress

39

his statements for violation of the Fifth Amendment should be
denied.

    B.    <u>Sixth Amendment</u>.

    The defendant claims his Sixth Amendment right to counsel
was violated because Deputy Marshal Jewitt initiated the
interrogation and questioned the defendant regarding his alleged
SORNA violation after the judicial proceedings on the SORNA
indictment had been filed.

    The defendant was entitled to assistance of counsel during
post-indictment interviews conducted by law enforcement.  "The
Sixth Amendment right to counsel is triggered 'at or after the
time that judicial proceedings have been initiated ... "whether
by way of formal charge, preliminary hearing, indictment,
information, or arraignment."'"  <u>Fellers v. U.S.</u>, 540 U.S. 519,
523 (2004)(quoting <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977)
(quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972)).  However,
if an accused has been advised of his <u>Miranda</u> rights, and
thereafter knowingly and intelligently chooses to answer an
officer's questions without the assistance of counsel, his
uncounseled statements are not subject to suppression under the
Sixth Amendment.  <u>Patterson v. Illinois</u>, 487 U.S. 285, 291
(1988).

        As a general matter, then, an accused who is admonished
        with the warnings prescribed by this Court in <u>Miranda</u>,
        384 U.S., at 479, 86 S.Ct., at 1630, has been
        sufficiently apprised of the nature of his Sixth
        Amendment rights, and of the consequences of abandoning
        those rights, so that his waiver on this basis will be
        considered a knowing and intelligent one. . . .  "Once
        it is determined that a suspect's decision not to rely
        on his rights was uncoerced, that he at all times knew

> he could stand mute and request a lawyer, and that he
> was aware of the State's intention to use his
> statements to secure a conviction, the analysis is
> complete and the waiver is valid as a matter of law."

Patterson, 487 U.S. at 296-297 (citing Moran v. Burbine, 475 U.S. 412, 422-23 (1986)).

Before any questioning began, defendant Zuniga was told that he had been indicted for failing to register as a sex offender in violation of federal law. Deputy Marshal Jewitt read the defendant each of his Miranda rights. Defendant Zuniga acknowledged that he understood his right to an attorney, and to have the attorney present during questioning, and indicated he was willing to answer the officer's questions. Deputy Marshal Jewitt asked if the defendant was willingly waiving his right to the services of an attorney during questioning. The defendant responded, "Sure." Ex. 1 at 01:26-01:34.

The defendant knowingly and intelligently elected to undergo questioning by the authorities without the aid of counsel. His responses to Deputy Marshal Jewitt's interrogation should not be suppressed under the Sixth Amendment. Patterson, 487 U.S. at 291 (holding the defendant had a Sixth Amendment right to counsel following his indictment, but police may nonetheless initiate questioning if the defendant was advised of his Miranda rights and waived his right to counsel); U.S. v. Chadwick, 999 F.2d 1282, 1286 (8th Cir. 1993)(holding that although the defendant was not told he was indicted, his post-indictment interrogation did not violate the Sixth Amendment because the defendant was advised of his Miranda rights and knowingly and intelligently waived his right to counsel).

41

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Court Judge, that the defendant's motion to dismiss and to suppress statements, filing 20, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT FURTHER HEREBY IS ORDERED:  Trial is set for 9:00 a.m. on May 19, 2008, for a duration of three trial days before the Honorable Richard G. Kopf in Courtroom 1, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska.  Jury selection will be at the commencement of trial.

DATED this 21st day of April, 2008.

BY THE COURT:

s/ *David L. Piester*

David L. Piester
United States Magistrate Judge

42